# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| HARRISON BREEDLOVE; HAAKON BREKKE; CONNOR SMITH; RAMONIE SMITH; JOSHUA TOWNES; MATTHEW GRAHAM CAMPBELL; CARTER SMITH; JOSH CWIERTNIAK, <br><br> on behalf of themselves and a class of similarly situation persons, <br><br>         Plaintiffs, <br><br> v. <br><br> SHERIFF VICTOR HILL, individually and in his official capacity as Sheriff of the Clayton County, Georgia; JOHN or JANE DOES 1-20, Deputies, Clayton County Sheriff's Department; CLAYTON COUNTY, GEORGIA; KEVIN ROBERTS, individually and in his capacity as Chief of the Clayton County Police Department; JOHN or JANE DOES 21-40, Officers, Clayton County Police Department; JOHN or JANE DOES 41-60, Officers, Morrow Police Department; JOHN or JANE DOES 61-80, Officers, Jonesboro Police Department, <br><br>         Defendants. | COMPLAINT <br><br> CIVIL ACTION NO. _____ <br><br> JURY TRIAL DEMANDED <br><br> CLASS ACTION |

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 challenging the mass detention, seizure, search, and arrest of over 100 alleged "street racers" at the Sam's Club located at 7325 Jonesboro Rd., Morrow, Georgia on March 13-14, 2002 by the Clayton County Sheriff's Office, Clayton County Police Department, Morrow Police Department, and Jonesboro Police Department.

2.      Without reasonable or particularized suspicion to suspect unlawful activity, much less probable cause to suspect the commission of a crime, the deputies and officers seized and arrested 75 adults and 27 (then) minors who were located at the empty Sam's parking lot after closing hours.   Even though the individuals arrested received bail for "Loitering or Prowling" pursuant to O.C.G.A.§ 16-11-36, no formal accusation has been filed, to date.

3.       Although the above-referenced Code Section "guarantees [a suspect's]  opportunity to explain his conduct, thereby possibly dispelling the officer's concern for the safety of the persons or property before any official is allowed", no arrestees were afforded that opportunity at any time prior to arrest. _Bell v. State_, 252 Ga. 267, 313 S.E.2d 678 (1984)

4.      Plaintiffs seek damages and declaratory relief on behalf of a class of all of those, defamed and labeled as "street racers", who were falsely arrested for Loitering or Prowling on March 13-14, 2021.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.      Jurisdiction is proper against all Defendants herein named; or, who may be later substituted as Parties based on facts adduced in discovery that are currently unavailable to Plaintiffs.

7.      Venue is proper in this district and division because the acts and omissions at issue occurred in Clayton County, Georgia.

## PARTIES

### *Plaintiffs[1]*

8.      Harrison Breedlove is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Breedlove without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

9.      Haakon Brekke is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Brekke without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

---

[1] Any reference to "Plaintiffs" incorporates reference to any and all putative class members, as well.

10.     Ramonie Smith is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Ramonie Smith without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

11.     Connor Smith is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Connor Smith without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

12.     Joshua Townes is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Townes without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

13.     Matthew Graham Campbell is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Townes without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

14.     Carter Smith is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Townes without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

15.    Josh Cwiertniak is an adult resident of the State of Georgia.   On March 13-14, 2021, Defendants detained, seized, searched, and arrested Townes without any individualized suspicion or any reason to believe that he was engaged in any unlawful activity.

*Defendants*

16.    At all times relevant hereto, Defendant Victor Hill was the Sheriff of Clayton County, Georgia and is subject to the venue and jurisdiction of this Court. Defendant Hill is sued in both his official capacity as a constitutional officer and in his individual capacity.  At all times relevant to this Complaint, Defendant Hill acted under the color of state law.   Defendant Hill may be personally served with the Complaint and Summons at his personal address:   335 Bearcreek Trail, Hampton, Georgia 30228.

17.    John or Jane Does 1-20 are employees of the Clayton County Sheriff's Department who participated in the mass seizure and arrest of Plaintiffs and others on March 13-14, 2021.   John or Jane Does 1-20 acted without any individualized suspicion or reason to believe that any Plaintiff was engaged in Loitering or Prowling on March 14, 2021.   John or Jane Does 1-20 acted under color of law and violated clearly established constitutional rights of the individuals they detained and arrested.   Plaintiffs do not presently have access to the identities of these employees and will substitute them as parties upon discovery thereof.

They are sued in their individual and official capacities; and, upon information and belief, they are residents of Georgia subject to the jurisdiction and venue of this Court.

18.    Defendant Kevin Roberts, at all times relevant to this Complaint, was Chief of Clayton County Police Department.   He is the agency's principal executive officer and has, or shares, ultimate responsibility for setting the policies and practices of CCPD to ensure that the agency's programs, policies, and practices comply with federal and state law.   He is sued in his individual and official capacity.

19.    John or Jane Does 21-40 are employees of the CCPD who participated in the mass seizure and arrest of Plaintiffs and others on March 13-14, 2021.   John or Jane Does 21-40 acted without any individualized suspicion or reason to believe that any Plaintiff was engaged in Loitering or Prowling on March 14, 2021.   John or Jane Does 21-40 acted under color of law and violated clearly established constitutional rights of the individuals they detained and arrested. Plaintiffs do not presently have access to the identities of these employees and will substitute them as parties upon discovery thereof.  They are sued in their individual and official capacities; and, upon information and belief, they are residents of Georgia subject to the jurisdiction and venue of this Court.

20.     John or Jane Does 41-60 are employees of the Morrow Police Department who participated in the mass seizure and arrest of Plaintiffs and others on March 13-14, 2021.   John or Jane Does 41-60 acted without any individualized suspicion or reason to believe that any Plaintiff was engaged in Loitering or Prowling on March 13-14, 2021.   John or Jane Does 41-60 acted under color of law and violated clearly established constitutional rights of the individuals they detained and arrested.   Plaintiffs do not presently have access to the identities of these employees and will substitute them as parties upon discovery thereof.  They are sued in their individual and official capacities; and, upon information and belief, they are residents of Georgia subject to the jurisdiction and venue of this Court.

21.     John or Jane Does 61-80 are employees of the Jonesboro Police Department who participated in the mass seizure and arrest of Plaintiffs and others on March 13-14, 2021.   John or Jane Does 61-80 acted without any individualized suspicion or reason to believe that any Plaintiff was engaged in Loitering or Prowling on March 13-14, 2021.   John or Jane Does 61-80 acted under color of law and violated clearly established constitutional rights of the individuals they detained and arrested.   Plaintiffs do not presently have access to the identities of these employees and will substitute them as parties upon discovery thereof.  They are sued in their individual and official capacities; and, upon information and

belief, they are residents of Georgia subject to the jurisdiction and venue of this
Court.

## STATEMENT OF FACTS

*Plaintiffs' lawful presence at the Sam's Club*

22.     During non-business hours approaching late evening/early morning
hours of March 13-14, 2021, Plaintiffs occupied an area of the empty, publicly
accessible, and well-lit parking lot of the Sam's Club located at 7325 Jonesboro
Rd., Morrow, Georgia.

23.     The individual Plaintiffs lawfully stood outside vehicles or occupied
vehicles without making annoying or offensive noise or doing anything else that
might annoy or disturb any person in the proximity, or otherwise.

24.     Plaintiffs' presence in the parking lot did not obstruct ingress or
egress of any nearby pedestrians or vehicles.

25.     The owner and occupier of the parking lot posted no signs or anything
else to expressly, or even impliedly, convey an intention to prevent access or
occupation of the parking lot during the time periods relevant to this Complaint.

26.     At all times relevant to the Complaint, Plaintiffs occupied a place they
were permitted to be at a time that they were permitted to be there.

27.     Before Defendants arrived, there were no requests for any Plaintiff to
leave the parking lot at any time by any individual, whether acting in their own

capacity or on behalf of any agency, including, but not limited to, the owner and/or occupier of the parking lot or any law enforcement officer.

*Unlawful Seizure, Detention, and Arrest by Defendants*

28.    On March 2, 2021, the Clayton County Police Department published a Facebook post relating to Street Racing:



29.    The post was met with a comment that the CCPD "won't do anything about it."

30.    The next week, CCPD attempted to arrest alleged "street racers" who allegedly evaded them through channels of egress that were not anticipated or prohibited.

31.    In response to public pressure and humiliation, CCPD combined with other local agencies (collectively "Defendants") to engage in knowingly unconstitutional tactics resulting in the unconstitutional arrests of all Plaintiffs and putative class members (totaling 102 individuals) on March 13-14, 2021.

32.    Prior to their arrival at the Sam's Club, Defendants obtained no warrants relating to any Plaintiff of putative class member; or, received reports of any kind providing a reason or cause to suspect that Plaintiffs had engaged in, were engaged in, or planned to engage in unlawful activities of any kind.

33.    CCPD allegedly received "multiple notifications from social media advising multiple cars were in Clayton County en route to Sam Club 7325 Jonesboro Rd., Morrow, GA 30260."   CCPD has provided no other details or information that might provide reasonable articulable suspicion of criminal activity or arguable probable cause to suspect any criminal activity.[2]

---

[2] The Sheriff's Office and CCPD denied open records requests by citing to a "pending prosecution" exemption; however, that is impeached by the fact that the Solicitor has never filed accusations for "loitering" relating to the incident.  Instead, the Clayton County Solicitor invited Plaintiffs to dispose of their "charges" by agreeing to pretrial diversion requiring the individuals to **pay** the County for intentionally violating their constitutional rights.

34.    Defendants engaged in no investigation of Plaintiffs' presence at the parking lot prior to seizing, detaining, and arresting 102 individual Plaintiffs and putative class members.

35.    Defendants made no attempt at any time to contact any person affiliated with the owner or occupier of the subject parking lot to see whether they disagreed with Plaintiffs' presence there while the business was closed and the premises parking lot was well-lit and publicly accessible.

36.    In the absence of any cause or reason to investigate, seize, detain, or arrest Plaintiffs while they were lawfully present at the Sam's parking lot, without any warning, Defendants seized Plaintiffs without cause when they used their vehicles to block any possible egress from the parking lot.

37.    Through their words and actions including, but not limited to, the use of emergency lights, sirens, and verbal announcements, Defendants expressly and impliedly conveyed the reasonable impression that Plaintiffs were not free to leave the premises.

38.    Plaintiffs could not depart the premises as evidenced by the fact that any Plaintiffs who attempted to exercise their freedom to leave were immediately seized, detained, and arrested.

39.    Any Plaintiffs who were either inside or outside vehicles who remained stationary when Defendants arrived on the scene were immediately swarmed by dozens of law enforcement officers and detained and arrested.

40.    All Plaintiffs and putative class members were immediately handcuffed and arrested by Defendants.

41.    Before they detained and arrested Plaintiffs, Defendants asked Plaintiffs no questions and provided Plaintiffs no opportunity to ask questions as to the basis for their seizure, detention, and arrest.

42.    At the scene of the parking lot of the Sam's Club, Defendants made no attempt explain what Plaintiffs were detained and arrested for; or, provide them with any other information relating to Plaintiffs' detention and arrest.

43.    At the scene of the parking lot of the Sam's Club, Defendants made no attempt to confirm or deny facts that prompted them to travel to the location and detain and arrest Plaintiffs.

44.    Before Defendants arrived on the scene, they had already decided to arrest Plaintiffs in contravention of their own internal policies, Georgia Administrative policies, the Georgia Code, the Georgia Constitution, and the United States Constitution.

45.    Any Plaintiffs who made any attempt to talk to Defendants before, during, or following their detention or arrest were ordered to be quiet.

46.    Plaintiffs, referred to by the Sheriff's Department as "street racers",

were deprived of their phones, handcuffed, and made to sit in the empty parking lot

with their hands behind them for hours before they were transported to Clayton

County jail.



**Advisory**    **88 Street Racers Now Facing The Wall At ("The Hill-ton")Georgia's Toughest Para-Military Jail! SHERIFF VICTOR HILL** *Message Expired*

Reading is fundamental.  However, when you drive too fast it is hard to read the warning signs posted at the entrances of Clayton Clayton County giving those intent on breaking the law the warning that it might be wise to turn around.   Eighty-eight street racers entering Clayton County last night obviously did not see the posted signs with the gold star badge of the Sheriff warning criminals that they are entering at their own risk.

   The 88 street racers that entered Clayton County gathered at the Sam's Club parking lot on Jonesboro road.   Members of Sheriff's Victor Hill's elite COBRA Unit, Blackhawk Unit,  and Tactical Patrol called Clayton County Police for back up and strategically block off every exit available for the racers and deployed spike strips to flatten their tires if they decided to run.   Once closing off all areas of escape, Deputies and Officers went from car to car and arrested all 88 of the street racing crew.  Four firearms were seized at least 50 of the vehicles were towed. 16 juveniles were present and the parents of the juvenile offenders were issued tickets when they arrived to pick up their children.

47.    Officials authorized by the Sheriff stated that Sheriff's Deputies, CCPD, and the other above-referenced Defendants "went from car to car and arrested all 88 of the street racing crew" after "closing off all areas of escape" using "spike strips."

48.    None of the Plaintiffs who were seized, detained, and arrested engaged in actions prior to their arrest that could be reasonably interpreted as an attempt to flee the scene upon the appearance of a law enforcement officer, refused to identify themselves, or manifestly endeavored to conceal himself or any object.

49.    Prior to Plaintiff's arrest for the charge of Loitering or Prowling, Defendants were required by Georgia law to afford Plaintiffs an opportunity to dispel any alleged alarm or immediate concern which would otherwise be warranted in the absence of an attempt to flee; or,  other circumstances that might make it impracticable to do so.

50.    Neither Plaintiffs nor any putative class members were afforded the requisite opportunity to explain his/her presence and conduct prior to their seizure, detention, and arrest for Loitering or Prowling.

51.    Following their unlawful seizure, detention, and arrest, Plaintiffs were transported for processing at the Clayton County Jail on March 14, 2021.

52.    Upon their arrival at the jail, Plaintiffs were humiliated with strip-searches, made to march and chant under direct threats of violence, and denied access to requested medications.

53.    For the dozen or more hours that Plaintiffs were detained at the jail without being told what they were even charged with, Plaintiffs were intentionally subjected to inhumane conditions including the intentional deprivation of food and water.

54.    Plaintiffs were expressly threatened with acts of violence by Deputies with the Sheriff's Department.   In one instance, a Deputy held a taser within an inch of a Plaintiff's eye while threatening to harm him.

55.    Plaintiffs were subjected to emotional and physical humiliation and abuse while jailed in Clayton County.

56.    Defendants referred to Plaintiffs as "street racers" and a "street racing crew" on public media and nixle alerts, even though neither Plaintiffs nor any putative class members were located on a street or highway when they were arrested.  Defendants confederated to manufacture the charge of "loitering and prowling" in an attempt to mask the overt unconstitutionality of their actions.

## CLASS ALLEGATIONS

57.     Plaintiffs bring this action individually and, pursuant to Rules 23(a)

and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of similarly

situated persons.   Plaintiffs seek to certify a class defined as:

> "all individuals who were detained, searched, and arrested by
> Defendants without a warrant or probable cause at the Sam's Club
> located at 7325 Jonesboro Rd., Morrow, Georgia on March 13-14,
> 2021."

58.     Plaintiffs meet the requirements of Rule 23(a) in that:

a.      The class is so numerous that joinder of all members is

impracticable because the class consists of 102 people.

b.      Every class member's claim turns on the following question,

which is therefore common to the class:   whether law

enforcement officers may seize, search, and arrest an individual

without any justification or individualized suspicion that the

person committed a crime.

c.      The claims of the named Plaintiffs are typical of the claims of

the class because each member of the class was searched,

seized, and arrested at 7325 Jonesboro Rd., Morrow, Georgia

by Defendants on March 13-14, 2021, with the same absence of

any individualized suspicion.

d.    The named Plaintiffs will fairly and adequately protect the interests of the class.   The Plaintiffs possess the requisite personal interest in the subject matter of the lawsuit and possess no interests adverse to other class members.   The Plaintiffs are represented by an attorney who had practice civil litigation for more than 20 years.

e.    Plaintiffs meet the requirement of Rule 23(b)(3) because common questions of law and fact predominate over questions affecting individual class members and a class action is superior to any other method of adjudicating this dispute.    In this case, where over 100 individuals were unlawfully searched, seized, and arrested by Defendants, a class action will permit common questions of law and fact to be resolved in one proceeding, and will avoid burdening the court with numerous, separate lawsuits that could result in inconsistent judgments.

## COUNT ONE – FALSE ARREST

**(by all Plaintiffs and putative class members against all Defendants)**

59.    Plaintiffs re-allege and incorporate by reference paragraphs 1-58 of this Complaint as if fully restated herein.

60.    Section 1983 provides a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States.

61.    Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be seized, searched, and falsely arrested without a warrant or probable cause.

62.    A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.   The existence of probable cause to arrest is based on objective standards.

63.    Defendants themselves, or through others, caused Plaintiffs to be initially seized, detained, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they blocked

exits of the Sam's parking lot with spike strips such that Plaintiffs reasonably did not believe they were free to leave.

64.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without a warrant or any kind, probable cause, reasonable suspicion, or legal authority.

65.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they approached and detained Plaintiffs even though no offense had been committed in Defendants' presence or within the immediate knowledge of Defendants; and, Defendants had no other reason to believe that any one Plaintiff or putative class member had engaged in any unlawful activity.

66.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they arrested Plaintiffs without affording them any opportunity to dispel any alleged cause for alarm as required by law.

67.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and arrested without individual particularized suspicion of unlawful activity or probable cause when they detained Plaintiffs even though Plaintiffs did not attempt to flee at the sight of law enforcement.

68.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they detained and arrested Plaintiffs in a place at a time or in a manner that is not unusual for law-abiding individuals to gather without warranting a justifiable or reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

69.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they detained and arrested those Plaintiffs merely sitting inside a parked car in a parking lot, or occupying vehicles in a parking lot that were either stationary or operated lawfully.

70.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they detained and arrested those Plaintiffs merely standing outside of parked cars in a parking lot.

71.    Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when they detained and arrested those Plaintiffs operating vehicles in a lawful manner in a location in which they were authorized to operate the vehicles.

72.     Defendants themselves, or through others, caused Plaintiffs to be seized, searched, and falsely arrested without individual particularized suspicion of unlawful activity or probable cause when there was no basis for finding aberrant behavior of any Plaintiff which would alarm a reasonable person that danger existed to any persons or property.

73.     Plaintiffs' detention and false arrest was neither justified at its inception; nor, justified at any time in the absence of a warrant, any reason to suspect any Plaintiff of unlawful activity or probable cause to suspect the commission of a crime, or exigent circumstances.

74.     Defendants' actions violated Plaintiffs' rights guaranteed under the Fourth Amendment to the U.S. Constitution not to be seized, searched, and falsely arrested without a warrant or probable cause.

75.     Defendants' actions were committed intentionally, with malice, and with actual intent to cause injury in the performance of their allegedly official functions.   Defendants knew that detaining, searching, and falsely arresting Plaintiffs and putative class members under the circumstances described herein violated their constitutional rights.

76.     Violation of Plaintiffs' and putative class members' above-referenced rights gives rise to a claim for damages pursuant to section 1983 of Title 42, United States Code.

77.     Defendants are jointly and severally liable for the violation of Plaintiffs and putative class members' rights, and the harm Plaintiffs and putative Class members suffered as a result, because each Defendant participated in the actions described herein, expressly ordered or directed, or implicitly authorized, approved, or knowingly failed to remedy the wrongs at issue.

78.     Defendants' above-described actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs and putative class members' rights and should be punished or deterred by an award of punitive or enhanced damages against Defendants as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs accordingly pray for the following relief:

a)    A trial by a jury of Plaintiffs' peers;

b)    Certification of a class pursuant to Federal Rule of Civil Procedure 23;

c)    Compensatory damages, in an amount to be determined by the jury;

d)    Punitive damages;

e)    Reasonable attorney's fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable laws; and

f)    Such further relief as this Court deems just and proper.

[Signature Appears on Follow Page]

Respectfully submitted this 6th day of March, 2023.

/s/ John Hollis Baker, Esq.
Georgia Bar No. 033797
john@georgialawyerteam.com
Baker & Slider, LLC
298 E. Washington St.
Athens, GA 30601
Phone: 706-208-1514